UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAMELA R.[1]

                                                      Plaintiff,        Case # 19-cv-734-FPG

v.                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                     Defendant.
_____

## INTRODUCTION

On October 21, 2015, Plaintiff Pamela R. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 19. The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared at a hearing before Administrative Law Judge Bryce Baird on March 6, 2018. Tr. 40. At the hearing, Plaintiff and a vocational expert testified. *Id*. On June 15, 2018, the ALJ issued an unfavorable decision. Tr. 16. The Appeals Council denied Plaintiff's appeal, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 18, 26. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] To better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

I.   **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.  **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2014, the alleged onset date. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: Osteoarthritis of the knees, obesity, Rheumatoid arthritis, and Cervical Disc Disease. *Id*. The ALJ found that Plaintiff also has the following non-severe impairments: depressive disorder, gastritis, and headaches. Tr. 21, 22. The ALJ determined that these impairments are non-severe because they do not cause more than a minimal impairment to Plaintiff's ability to do work. Tr. 22.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 23. Next, the ALJ determined that Plaintiff maintained the RFC to perform sedentary work. Tr. 24. However, the ALJ found that Plaintiff had exertional limitations including that Plaintiff can: lift and carry 5-10 pounds occasionally, frequently sit for up to six hours in an eight-hour workday and stand or walk for up to two hours in an eight-hour workday, climb ramps and stairs occasionally, frequently balance, occasionally stoop (bend), kneel, and crouch, but never crawl or climb ropes, ladders, or scaffolds. *Id*. The ALJ also found that the Plaintiff must avoid concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gasses, and poor ventilation. *Id*.

At steps four and five, the ALJ concluded that Plaintiff could not perform any past relevant work, but that there were jobs that existed in the economy that Plaintiff could perform, considering

her age, education, and work experience, including as a Civil Service Clerk, Identification Clerk, Credit Card Clerk. Tr. 34, 35. As such, the ALJ found that Plaintiff was not disabled. Tr. 35.

**II.     Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that the ALJ: (1) improperly substituted his "non-medical" lay judgment over that of Plaintiff's treating rheumatologist Dr. Douglas Jones; and (2) failed to find any severe mental impairments in part because the ALJ did not consider the favorable portion of Dr. Yu-Yin Lin's medical opinion. Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other argument.

The ALJ determined that Plaintiff could sit for up to six hours in an eight-hour workday. Tr. 24. In formulating this RFC, the ALJ gave great weight to an opinion from Dr. Richard Hoy, Plaintiff's orthopedic specialist. Tr. 33. Dr. Hoy opined in 2012 that Plaintiff could return to work despite her fibromyalgia diagnosis. Tr. 25. Dr. Hoy issued this opinion between three and four years before Dr. Jones's opinion, four years before her second right knee surgery, and six years before the ALJ's decision. Nothing in Dr. Hoy's report indicated the length of time Plaintiff could sit. The ALJ also inferred from Plaintiff's testimony regarding travelling via plane that she could sit for up to six hours. Tr. 25, 33, 71. Plaintiff testified that it was difficult for her to travel by plane, and that she needed to get up from her seat and stretch at various points during the flight. Tr. 72. Yet, nowhere in the record did Plaintiff, or any doctor, indicate that, after being terminated from her job in 2014, she could sit for longer than four hours without standing up or stretching.

Therefore, this evidence does not support the ALJ's conclusion that Plaintiff could sit for up to six hours. It is well-settled that an ALJ "cannot arbitrarily substitute his own judgment for the complete medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (finding that

there was an absence of medical opinion to conclude the Plaintiff could work a sedentary job and the matter was remanded) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). The ALJ cannot merely summarize Plaintiff's treatment notes and activities without tethering evidence to specific abilities and limitations contained in the RFC finding. *Gillespie v. Saul*, No. 19-CV-6268-MJP, 2020 WL 5628068, at *4 (W.D.N.Y Sept. 21, 2020) ("The ALJ improperly relied on his own lay opinion of the medical records to determine plaintiff's RFC instead of obtaining a medical opinion from a qualified medical source.")

Without a further explanation by the ALJ as to how he concluded that Plaintiff could sit for up to six hours each workday, the Court is left to assume that he relied on his own lay opinion when assessing the limitations. *Karen Beth L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01325 EAW, 2021 WL 681915, at *4 (W.D.N.Y Feb. 23, 2021) ("[T]o the extent the ALJ included limitations in the RFC assessing plaintiff's physical impairments, those limitations are not supported by substantial evidence.") An ALJ is free to choose between properly submitted medical opinions, but may not substitute his lay opinion for a medical expert's opinion. *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("The need for more specific evidence as to the amount of time plaintiff would be off task is relevant here, since the ALJ gave diminished weight to all medical opinions in the record"). There is simply is no evidence in the record from which the ALJ could draw the conclusion that Plaintiff could sit for up to six hours. Tr. 59, 372, 396, 705.

Moreover, while crediting inapposite and vague evidence in the record regarding Plaintiff's ability to sit, the ALJ failed to provide good reasons for rejecting the relevant and specific opinions from Plaintiff's treating physician Dr. Jones, who suggested that Plaintiff could sit for no more than four hours.

> To override the opinion of the treating physician, we have held that the ALJ must <u>explicitly</u> consider, <u>inter alia</u>: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (finding the ALJ rejected a doctor's opinion and substituted a lay opinion without providing a reasonable explanation for doing so) (emphasis added).

The ALJ gave little weight to Dr. Jones's opinions because he perceived them to be inconsistent with one another, the other medical evidence in the record, and Plaintiff's own testimony. *Id*. In his December 12, 2015 report, Dr. Jones opined that Plaintiff could sit between zero and two hours during an eight-hour workday. Tr. 372. Several months later, on August 3, 2016, Dr. Jones opined that Plaintiff could sit for up to four hours during an eight-hour workday. Tr. 396. Plaintiff said in her testimony that the longest she could sit for was an hour and a half. Tr. 59.

Even if there were inconsistencies amongst this evidence, it was all consistent to the extent that it demonstrated that Plaintiff could sit no more than four hours. By contrast, as discussed above, the ALJ's conclusion that Plaintiff could sit for more than six hours is not supported by persuasive evidence in the record.

Moreover, there were reasons to favor Dr. Jones's opinion. As Plaintiff's treating physician, Dr. Jones saw Plaintiff at least every six months starting from her first appointment with Dr. Jones on October 9, 2012. Tr. 338, 345. Plaintiff also saw Dr. Jones as needed after surgeries or as pain would increase from the fibromyalgia or arthritis. Tr. 338-70. Dr. Jones's medical source statement from 2015 provided that the Plaintiff could stand/walk and sit between zero to two hours

6

in a normal eight-hour workday, that she could rarely twist, and never stoop, bend, crouch, climb ladders, nor climb stairs. Tr. 372. Dr. Jones then opined in 2016 that Plaintiff could sit for up to four hours during an eight-hour workday. Tr. 396. With respect to standing and walking, the remaining portions of the 2016 report remained consistent with the 2015 report. *Id.* The 2016 report also included that Plaintiff could rarely twist, stoop, climb stairs, and never climb ladders. *Id.*

Additionally, the ALJ never received a third opinion from Dr. Jones, creating a gap in the record. Tr. 63 At the hearing, the ALJ afforded Plaintiff an opportunity to submit Dr. Jones's December 12, 2017 opinion. Tr. 64. Plaintiff's counsel did submit some records of a March 19, 2018 visit after the hearing, but not the requested opinion from Dr. Jones in December of 2017. Tr. 703.

The ALJ has an independent duty to develop the record and has a duty to explicitly evaluate every opinion using the four factors in 20 C.F.R. § 404.1527(c). However, there is conflicting case law in the Second Circuit when it comes to interpreting the ALJ's duty to develop the record when the ALJ has tasked Plaintiff's counsel with acquiring missing information. *Sotosoa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y Nov. 3, 2016) ("[T]his court concludes that the ALJ did not satisfy his duty to develop the record though he advised . . . counsel to obtain the missing . . . treatment notes."). In *Sotososa*, the Court held that even though the ALJ asked Plaintiff's attorney to obtain missing information from the record, the ALJ retained the ultimate duty to ensure the record was complete. *Id.* The ALJ must make some additional effort beyond that request, for example, following up with Plaintiff's attorney or collecting the missing evidence himself. *McCaslin v. Comm'r of Soc. Sec.*, No. 18-CV-1135-FPG, 2019 WL 6000996, at *2 (W.D.N.Y. Nov. 14, 2019) ("The ALJ must make some additional effort beyond that request . . . .").

The duty of an ALJ is unlike that of a judge at trial; the ALJ is to investigate and develop facts on behalf of the Plaintiff when granting or dismissing benefits. *Id*. The ALJ is responsible for developing the complete medical history, including obtaining medical reports from medical sources. 20 C.F.R. 404.1545(a)(3). The duty to make every reasonable effort to obtain a missing report that could have an outcome on the ALJ's decision is heightened where, as here, the contents in the report are at least in the preceding twelve months of the final decision. *Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 215 (S.D.N.Y. 2017) ("[T]he ALJ 'shall make every reasonable effort to obtain from the individual's treating physician . . . in order to properly make the disability determination"); *see generally* 42 U.S.C. § 423(d)(5)(B) (ALJ shall consider all evidence available and shall develop a complete medical history of at least twelve months for any case in which the individual is determined not disabled).

Here, the ALJ left the record open for two weeks. Tr. 64. Plaintiff's attorney did submit a report from Dr. Jones in March of 2018. Tr. 703. After this record was submitted, the ALJ never followed up with the missing notes from Dr. Jones from 2017, nor did the ALJ ask the attorney to submit the correct report from 2017. In fact, despite Plaintiff's counsel submitting the March 2018 opinion from Dr. Jones, the ALJ never mentioned this report in his decision. That unmentioned report from Dr. Jones concluded—consistent with Dr. Jones's 2016 report—that Plaintiff could sit for up to four hours during an eight-hour workday. Tr. 396, 705. The ALJ cannot discount opinions from a treating physician on the basis of them being inconsistent with each other without considering the entire universe of available opinion evidence from that treating physician. *Truesdale v. Barnhart*, No. 03 Civ. 0063(SAS), 2004 WL 235260, at *6 (S.D.N.Y Feb 6, 2004) ("[B]ecause the Commissioner failed to fully develop the record and failed to explain why he discounted the opinions of the treating physicians that were contained in the record [the Court]

cannot conclude that the Commissioner's finding of no disability is supported by 'substantial evidence.'"); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999). If the ALJ perceives any inconsistencies in the treating physician's diagnosis, the ALJ bears affirmative duty to seek out more information to fully develop the administrative record. *Jeffcoat v. Astrue*, No. 09-CV-5276 (KAM), 2010 WL 3154344, at *14 (E.D.N.Y Aug. 6, 2010) ("[O]n remand, the ALJ should indicate his attempts to seek more information to clarify the inconsistencies that he found . . . .");*see Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

The ALJ's failure to properly weigh Dr. Jones's opinion was not harmless error. Contrary to the opinion of Dr. Jones, the RFC allowed for the ability to sit up to six hours during an eight-hour workday. Tr. 24. Had the ALJ incorporated Dr. Jones's opinion into the RFC, the ALJ would have not concluded that Plaintiff could sit for up to six hours in an eight-hour workday. Because the ALJ had not given more weight to the treating physician, nor obtain the missing record to complete the entire record, the error is not harmless.  Based on the reasons discussed above, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 18, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 26, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: April __, 2021
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court